DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-555-FDW
(3:06-cr-151-FDW-DCK-3)

| | |
|---|---|
| MICHAEL ATTILIO MANGARELLA, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> _____) | **ORDER** |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and on Petitioner's Motion to Appoint Counsel, (Doc. No. 7).

**I. BACKGROUND**

On December 5, 2006, Petitioner and thirteen co-defendants were charged in a Superseding Bill of Indictment, filed in the United States District Court for the Western District of North Carolina, with one count of conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 371 and twenty-two counts of wire fraud, in violation of 18 U.S.C. § 1343. (Criminal Case No. 3:06cr151-FDW-DCK-3, Doc. No. 113: Indictment). The charges arose out of a conspiracy to defraud and obtain money and property from victims, particularly the elderly, who were deceived into thinking they had won a sweepstakes contest. (Id., Doc. No. 407 at 4: Presentence Investigation Report). Petitioner was arrested in Costa Rica on May 16, 2006. (Id. at 1). Petitioner was extradited back to the United States on April 4, 2008. (Id.). The Government states that Petitioner's extradition was delayed, in part, because of an investigation

1

by Costa Rican authorities into an unrelated fraud allegation. Attorney Chiege O. Kalu Okwara represented Petitioner at trial and on appeal.

After a three-day trial, Petitioner was found guilty of all counts on September 18, 2008. (Id., Doc. No. 341: Jury Verdict; Doc. No. 342: Jury Verdict on Forfeiture). Count 18 was dismissed on a motion of the Government. (Id., Docket Entry dated September 18, 2008). In preparation for sentencing, the probation officer prepared a presentence investigation report ("PSR"). Based on a total offense level of 43 and criminal history category of III, Petitioner's guideline sentencing range was life imprisonment. (Id., Doc. No. 407 at 23). Furthermore, Petitioner faced a statutory maximum sentence of not more than 60 months on Count One (the conspiracy conviction under 18 U.S.C. § 371), and he faced a statutory maximum sentence of 240 months for each of Counts 2 to 17 and Counts 19 to 23 (the wire fraud counts), with all counts to be served consecutively. (Id.).

At trial, the Government presented the testimony of several co-conspirators who were involved in Petitioner's telemarketing operations. These co-conspirators testified to the effect that Petitioner was involved in fraudulent sweepstakes operations for approximately six years, during which time he owned seven call centers at various times; recruited others into the business; wrote scripts to teach employees how to make the initial pitch to victims and how to induce the victim to send additional money after an initial payment; and managed at least one of the call centers as the boss, performing the administrative duties, and supervising the callers. See (Id., Doc. No. 407 at 4-11). The co-conspirators also testified that Petitioner provided the name of the critical "list broker" contact so the call center could purchase its leads (i.e., the lists of victims). See (Id.).

2

At the beginning of the trial, Petitioner invoked the rule of sequestration for the Government's witnesses pursuant to Rule 615 of the Federal Rules of Evidence. (Id., Doc. No. 494 at 25: Trial Tr.). Thus, no government witness was in the courtroom when another government witness was testifying (except for the case agent who sat at the counsel table). However, due to spatial constraints in the courthouse and the limited resources of the Marshal Service, the testifying co-conspirators were held in three different holding cells, but were not audibly separated. (Id., Doc. No. 497 at 85-87: Trial Tr.). Each of the co-conspirators testified that while in the holding cells they did discuss non-case related matters but that they did not coordinate their testimony. See (Id.).

The Court initially sentenced Petitioner to a term of 600 months imprisonment. While Petitioner's appeal was pending, the Fourth Circuit Court of Appeals vacated the sentence of co-defendant Giuseppe Pileggi on the ground that it was a de facto life sentence which was not in accord with the assurances given to Costa Rica. United States v. Pileggi, 361 Fed. App'x 475, 478-79 (4th Cir. 2010). Pileggi had received the same term of imprisonment as Petitioner. Thereafter, Petitioner moved to remand his own case for resentencing. The Government did not oppose the motion to remand, and on July 23, 2010, the Fourth Circuit Court of Appeals granted the motion to remand. (Criminal Case No. 3:06cr151-FDW-DCK-3, Doc. No. 523: Order).

An inadvertent misunderstanding between the Office of International Affairs and the Government's Fraud Section resulted in the Court being given incorrect information regarding the sentencing assurances given to the Republic of Costa Rica as part of Petitioner's extradition. Specifically, the Government incorrectly informed the Court at the first sentencing hearing that the Office of International Affairs had given the Costa Rican government an assurance that Petitioner would not be incarcerated for more than fifty years. See (Id., Doc. No. 498 at 125-26).

Instead, the Costa Ricans had been told that Petitioner would not receive a penalty of death or a life sentence. (Id.). At the resentencing hearing held on May 11, 2013, the Government correctly advised the Court of the assurances given to Costa Rica and also presented evidence, in response to an official inquiry from the United States, that the Costa Rican government did not view the original fifty-year sentence given to Petitioner at the first sentencing hearing to violate the terms of the sentencing assurance. See (Id., Doc. No. 587 at 14-19). At resentencing, the Court adopted its previous rulings on Petitioner's objections to the presentence report, imposed a sentence of 360 months, and ordered restitution of $2,687,501.47, and forfeiture of $10 million. (Id. at 75-81). Because no count carried a statutory maximum equal to 360 months, in order to achieve that total sentence the Court imposed the maximum 60-month sentence on Count One, a 60-month sentence on Count Two, and concurrent 240-month sentences on the remaining counts, with the sentences for Counts One and Two to run consecutive to each other and to the remaining 240-month sentences. See (Id., Doc. No. 573: Amended Judgment). The Court entered its amended judgment on May 26, 2011. (Id.).

Petitioner appealed his conviction and sentence. On July 20, 2012, in an unpublished decision, the Fourth Circuit affirmed this Court's judgment. United States v. Mangarella, No. 11-4613, 2012 WL 2948552 (4th Cir 2012). The Fourth Circuit issued its mandate on September 25, 2012. See (Criminal Case No. 3:06cr151-FDW-DCK-3, Doc. No. 620: Mandate). Petitioner filed a motion for rehearing and rehearing en banc, which motion was denied on September 17, 2012. Petitioner placed the petition in the prison system for mailing on September 16, 2013, and it was stamp-filed in this Court on September 30, 2013. Petitioner asserts that he received ineffective assistance of counsel because (1) trial and appellate counsel did not contest that the sentencing enhancements were part of the offense conduct and had to be proven to the jury; (2)

4

trial and appellate counsel did not contest that witnesses were in contact with each other before testifying; (3) and (4) trial counsel did not contest that there were violations of the extradition treaty with Costa Rica; (5) trial counsel failed to obtain from the Government information on the "deals" given to prosecuting witnesses; (6) trial and appellate counsel filed the petition for a rehearing and rehearing en banc out of time; (7) trial and appellate counsel failed to contest the alleged vast disparity in the sentences given to Petitioner and his co-conspirators, and (8) trial counsel failed to argue that the sentencing enhancements for a firearm and for the "kingpin" designation had to be proven to the jury beyond a reasonable doubt.

**II.  STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits ad the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter and Respondent's response, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

**III. DISCUSSION**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

5

professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

  A. Petitioner's First Ground for Relief

In his first ground for relief, Petitioner contends that he received ineffective assistance of counsel because counsel failed to object to "sentencing enhancements" that were "elements" of the offenses he committed and had to be proven to a jury. Petitioner did not specify which sentencing enhancements that are supposedly the "elements" of the offenses he committed. The only sentencing enhancement sought by the Government was pursuant to 18 U.S.C. § 2326 for wire fraud in connection with telemarketing. Under this provision, the United States sought to increase the maximum punishment for each wire fraud count of conviction by an additional 107 years – i.e., from 20 years per count to 30 years per count, based on its contention that Petitioner's telemarketing scheme "victimized ten or more persons over the age of 55" or "targeted persons over the age of 55." 18 U.S.C. § 2326(2). The defense attorney objected to the application of this enhancement since it had not been submitted to and found by the jury, and the Court sustained the objection. (Criminal Case No. 3:06cr151-FDW-DCK-3, Doc. No. 498 at 26: Sentencing Tr.).

Furthermore, if Petitioner is referring to Guideline sentencing factors or adjustments, rather than a sentencing enhancement, defense counsel objected to each of the sentencing factors in the Presentence Investigation Report.[1]  See (Id., Doc. No. 415: Objections).  In addition to her written objections, the defense attorney presented argument to the Court on these issues.  Although the Court overruled many of her objections to the sentencing factor, it sustained her objection to the "vulnerable victim" sentencing factor.  (Id., Doc. No. 498 at 34).  Petitioner has simply not shown ineffective assistance of counsel based on his claim on his first ground for relief.

The Government states in its brief that is also possible that Petitioner is trying to allege a violation of the "rule of specialty."  This "rule" permits a person extradited to the United States to be tried only for the offenses for which extradition was granted.  United States v. Day, 700 F.3d 713, 722 (4th Cir. 2012) (citing United States v. Rauscher, 119 U.S. 407, 430 (1886)).  Costa Rica extradited Petitioner with the specific assurance that he would not be tried or punished for offenses other than those for which extradition was granted.  Here, the Court's consideration of the acts that pertained to Petitioner's sentencing factors and adjustments did not violate the rule.  See United States v. Lomeli, 596 F.3d 496, 503 (8th Cir. 2010) (district court

---

[1] Petitioner's claim appears to be made on the mistaken belief that any facts that are applied to increase a defendant's punishment must be found by a jury beyond a reasonable doubt, and he cites to several Supreme Court cases for alleged support of this proposition, including United States v. Booker, 543 U.S. 220 (2005), Blakely v. Washington, 542 U.S. 296 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000).  A fact that does not increase the mandatory minimum or maximum statutory sentencing range, however, is not required to be found by a jury beyond a reasonable doubt.  Rather, it is well settled that a sentencing judge is entitled to find by a preponderance of the evidence facts relevant to the determination of a Guidelines sentencing range.  See United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict.").

may consider criminal history when sentencing defendant for extradited offenses). Petitioner has failed to show ineffective assistance of counsel based on counsel's alleged failure to object to "sentencing enhancements" that were "elements" of the offenses he committed and had to be proven to a jury.

In sum, Petitioner's first ground for relief is without merit.

B. Petitioner's Second Ground for Relief

In his second ground for relief, Petitioner complains that his counsel did not object to the Government witnesses being allowed to speak with each other. Petitioner also alleges, in conclusory and unsupported fashion, that the testifying witnesses "pooled" their testimony to get all their stories straight before taking the stand. During the trial it was brought to the attention of counsel and the Court that (1) the co-operating witnesses who were in custody were transported to the Courthouse by the Marshals in one van; (2) once in the courthouse the co-operating witnesses were housed in three cells; and (3) the co-operating witnesses could talk with each other from cell to cell. During the trial the witnesses testified, under oath, that they did not attempt to coordinate their testimony but, rather, they only spoke about non-case-related matters. See (Criminal Case No. 3:06cr151-FDW-DCK-3, Doc. No. 497 at 85). In fact, the testimony of the co-conspirators varied in numerous details. For example, co-conspirators Testore and Cunningham testified to different dates on which Petitioner first arrived in Costa Rica. (Id. at 85-86).

On the record, the defense attorney made an oral motion for mistrial related to the discussions between co-operating witnesses. (Id. at 85). After reviewing the evidence, the Court denied the motion. In denying the motion, the Court noted that sequestration is taken very seriously, but the physical restraints on space provided no other option but to house witnesses

8

who were in custody in the same area while they waited to be called to the stand. (Id. at 85-86). Indeed, the Court noted that there was no suggestion that the Government caused the alleged violation of the sequestration order, or could have done anything differently to prevent the issue from arising. See (Id.). Furthermore, Rule 615 of the Federal Rules of Civil Procedure states that "at the request of a party the court shall order witnesses excluded so they cannot hear the testimony of other witnesses." FED. R. EVID. 615. Thus, the Rule is not violated when, during the course of the trial, witnesses have contact with each other outside of the courtroom. See United States v. Engelmann, 701 F.3d 874, 877 (8th Cir. 2012). Petitioner has simply failed to show ineffective assistance of counsel related to his allegation that the witnesses pooled their testimony.

In sum, Petitioner's second ground for relief is without merit.

C. Petitioner's Third and Fourth Grounds for Relief

In his third and fourth grounds for relief, Petitioner contends that defense counsel was deficient because she did not object to Petitioner's extradition from Costa Rica as being allegedly in violation of the Extradition Treaty between the United States and Costa Rica. As the Government notes, Petitioner's claim appears to be based on Petitioner's incorrect assertion that he is not a United States citizen but, rather, that he is a citizen of Nicaragua, as well as his mistaken belief that the Extradition Treaty between the United States and Costa Rica prohibits the extradition to the United States of foreign nationals in Costa Rica.[2]

---

[2] The Government states in its brief that after the conviction, but before sentencing, Petitioner asserted, for the first time, that he was born in Nicaragua rather than the United States. The Government states that, in response, the Government produced to the probation officer a copy of Petitioner's official birth record maintained by the Department of Health, Vital Records, in New York, confirming that Petitioner was born in Brooklyn, New York, on July 3, 1954. Unfortunately, and in non-compliance with this Court's local rules, the Government has provided

The United States' Extradition Treaty (Treaty) with Costa Rica sets forth the mutual terms and conditions under which an individual in Costa Rica may be extradited to the United States.³ Contrary to Petitioner's suggestion, the Treaty does not prohibit the extradition of foreign nationals (i.e., non-Costa Rican citizens) from Costa Rica to the United States. The Extradition Treaty permits, but does not require, Costa Rica to refuse to extradite its own nationals (i.e., Costa Rican citizens).⁴ The Treaty does not place any limitations on the extradition of anyone who is not a Costa Rican citizen. Therefore, defense counsel was not ineffective merely because she did not pursue a baseless claim.

Petitioner also contends that counsel was deficient because she did not argue that Petitioner's sentence violated the Extradition Treaty. It appears that Petitioner is attempting to argue that counsel was deficient because she did not object to the actual sentence Petitioner received as being in violation of the sentencing assurances given to the Cost Ricans (i.e., that he would not be given a sentence which requires him to spend the rest of his natural life in prison) because a 360-month sentence, in Petitioner's opinion, amounts to a life sentence.

Once again, Petitioner is factually incorrect. The issue of the impact of the assurances given to Costa Rica was discussed extensively during the re-sentencing hearing. (Criminal Case

---

very few citations to the record throughout its brief, including the factual contention regarding Petitioner's official birth records. See Local Rule 7.1(C) ("Factual contentions shall be supported as specifically as possible by citation to exhibit number and page."). The PSR does state that Petitioner claimed before sentencing that he was born in Nicaragua, but that the probation officer obtained records showing that he was born in Brooklyn, New York. See (Criminal Case No. 3:06-cr-151, Doc. No. 407 at 20).

³ U.S./Costa Rican Extradition Treaty Article 8 Section 1
http://www.costaricalaw.com/Treaties/extradition-treaty-between-costa-rica-and-the-united-states-of-america.html

⁴ ARTICLE 8 Extradition of Nationals "(1) Neither of the Contracting Parties shall be bound to surrender its nationals. The Requested State, however, shall have the power to grant the extradition of its nationals if, in its discretion, this is deemed proper to do and provided the constitution of the Requested State does not so preclude…."

No. 3:06cr151-FDW-DCK-3, Doc. No. 589 at 25-30: Resentencing Tr.). At the time, the Government was strongly urging the Court to re-sentence Petitioner to fifty years. See (Id.). In support, the Government introduced the diplomatic note from the Costa Rican government in which the Costa Ricans indicated that the fifty-year (600 months) sentence initially given to Petitioner did not violate the sentencing assurances. See (Id. at 23). If Petitioner's original sentence of 600 months did not violate the sentencing assurances then, clearly, a sentence of 360 months did not violate the sentencing assurances.

Petitioner also asserts, without any factual basis, that the sentence of thirty years that he received was equivalent to a life sentence and that his counsel should have called an actuary to prove this point. This contention is without merit. Petitioner was 52 years old when he was arrested in Costa Rica on the charges. As the Government notes, assuming Petitioner receives all of his good time credit, he will be in his seventies when he is released. Moreover, calling an actuary would have shown nothing more than the life expectancy for males in this country, which the Government asserts is greater than the age Petitioner will be when he is released. Moreover, due to counsel's efforts, the Court reduced Petitioner's sentence to a below-guideline sentence of thirty years.

In sum, Petitioner's third and fourth grounds for relief are without merit.

D. Petitioner's Fifth Ground for Relief

In his fifth ground for relief, Petitioner contends that defense counsel was deficient because she did not know the "deal" given to the co-operating witnesses who testified against him. This contention is factually incorrect. The Government provided, inter alia, defense counsel with a copy of each testifying cooperating witness' plea agreements. The Government had no other deals with the witnesses other than what was set forth in the plea agreements. Each

11

cooperating witness testified on direct examination about pleading guilty and their general understanding of the terms of their plea agreements. In addition, the defense attorney actually cross-examined all but one of the co-operators about the terms of their "deal" with the Government, including various provisions of their plea agreements. See (Criminal Case No. 3:06cr151-FDW-DCK-3, Doc. No. 495 at 166, 245; Doc. No. 496 at 90, 200, 246). During the cross-examinations of these witnesses, defense counsel was allowed to explore each witness' understanding of his deal with the Government. Petitioner simply fails to show that he received ineffective assistance of counsel based on his conclusory and unsupported assertion that defense counsel did not know about certain deals that the cooperating witnesses made with the Government.

In sum, Petitioner's fifth ground for relief is without merit.

E. Petitioner's Sixth Ground for Relief

In his sixth ground for relief, Petitioner asserts that counsel was deficient because she filed the petition for rehearing and rehearing en banc after the deadline to do so had passed. This claim is without merit. While it is true that the petition for rehearing and rehearing en banc was untimely, defense counsel filed the appropriate motion to allow her to file the petition out of time. Furthermore, the Fourth Circuit granted her motion and allowed the late filing. Once the Fourth Circuit granted the motion and allowed the late filing, the pleadings were treated exactly the same as those filed on time. Petitioner has simply not shown that he was prejudiced in any way by the late filing.

In sum, Petitioner's sixth ground for relief is without merit.

F. Petitioner's Seventh Ground for Relief

In his seventh ground for relief, Petitioner asserts that defense counsel was ineffective for failing to object to the "vast" disparity between the sentence Petitioner received and the sentences received by his co-defendants. This claim is without merit. Petitioner does not identify how the disparity of the sentences was unwarranted. Here, the most similarly situated co-defendant to Petitioner was co-defendant Pileggi. As the Government notes, Petitioner and his co-defendant Pileggi both held the role of room owners and managers in the scheme to defraud; both were involved in the scheme to defraud for several years; both taught their employees how the scheme worked; both were responsible for millions of dollars in losses to thousands of individual victims; and both were convicted at trial. See (Criminal Case No. 3:06-cr-151-RJC-1, Doc No. 326: PSR). The major difference between Petitioner and Pileggi was in their criminal history calculations. Petitioner was a Criminal History category III, while Pileggi was a Criminal History category I. See (Id. at 16). As a result, Pileggi was sentenced to 25 years, while Petitioner received a 30-year sentence. See (Id., Doc. No. 595: Amended Judgment).

The co-defendants who received lesser sentences were not in the same situation as Petitioner for numerous reasons. In many cases, these co-defendants received reductions in their sentences for not only pleading guilty but also for cooperating with the Government. Others were not as criminally culpable as Petitioner—i.e., they were not owners or they were involved in sweepstakes crimes for shorter periods of time. During the re-sentencing hearing the Court specifically addressed with the defense attorney the need to avoid sentencing disparity along with most of the other Section 3553(a) factors. Moreover, as the Fourth Circuit has repeatedly stated, the sentencing factor addressing sentencing disparities, 18 U.S.C. § 3553(a)(6), is aimed primarily at eliminating national sentencing inequity, not differences between the sentences of

co-defendants.  United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996); see also United States v. Simmons, 501 F.3d 620, 623-24 (6th Cir. 2007) (collecting cases).  In sum, there was no unwarranted disparity in the sentences, and defense counsel was, therefore, not ineffective for failing to object to the disparities in sentencing between Petitioner and his co-defendants.

In sum, Petitioner's seventh ground for relief is without merit.

G.  Petitioner's Eighth Ground for Relief

In his eighth ground for relief, Petitioner contends that counsel was ineffective for failing to object to the Court's findings related to possession of a firearm and "kingpin" designation.  If Petitioner is attempting to complain about the finding that he was an organizer and leader under U.S.S.G. § 3B1.1, he fails to show ineffective assistance of counsel.  Defense counsel objected to this sentencing enhancement, and the trial court overruled this objection.  See (Id., Doc. No. 498 at 69-70).  Thus, Petitioner cannot show ineffective assistance of counsel related to his sentencing enhancement based on being an organizer and leader under U.S.S.G. § 3B1.1.

With regard to the firearm charge, Petitioner is presumably referring to the Government's attempt to have two points added pursuant to U.S.S.G. § 2B1.1 based on Petitioner's alleged use of a firearm while committing the crimes for which he was convicted.  See (Id., Doc. No. 413 at 1-2).  Defense counsel objected to the two-point enhancement, the Court received testimony on the issue at the sentencing hearing, and the Court overruled Petitioner's objection, finding by a preponderance of the evidence that Petitioner did possess a dangerous weapon or firearm in connection with the offense and the two-point enhancement would therefore apply.  (Id., Doc. No. 498 at 57-59).  Counsel's conduct in objecting to and arguing against the firearm enhancement certainly was not deficient performance.  Moreover, as previously discussed with regard to Petitioner's first ground for relief, Petitioner's eighth ground for relief also appears to

14

be made on the mistaken belief that <u>any</u> facts that are applied to increase a defendant's punishment must be found by a jury beyond a reasonable doubt. To the contrary, the sentencing judge may find certain facts by a preponderance of the evidence relevant to the determination of a Guidelines sentencing range. See <u>Benkahla</u>, 530 F.3d at 312.

In sum, Petitioner's eighth ground for relief is without merit.

### IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 petition is dismissed.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's § 2255 motion, (Doc. No. 1), is dismissed with prejudice.

2. Petitioner's Motion to Appoint Counsel, (Doc. No. 7), is **DENIED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: April 22, 2014

Frank D. Whitney
Chief United States District Judge